**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MARSHONDA FUGETT,            )
                             )
          Plaintiff,         )
                             )
     v.                      )     Case No. 14-2291-JAR
                             )
SECURITY TRANSPORT           )
SERVICES, INC.,              )
                             )
          Defendant.         )

**MEMORANDUM AND ORDER**

This matter comes before the court upon Defendant Security Transport Services, Inc.'s Motion for Protective Order (ECF No. 9). Security Transport Services, Inc. (STS) seeks a protective order forbidding discovery with regard to A.J. Kotich, one of STS's attorneys of record who also served as STS's general counsel during the period when the events giving rise to this litigation occurred. Alternatively, STS asks the court to forbid inquiry into certain matters or to limit the scope of discovery to certain matters. Plaintiff Marshonda Fugett opposes the motion.

Although Mr. Kotich is an attorney of record, STS also identified him as a potential witness on its Rule 26(a)(1) initial disclosures, as did Ms. Fugett. The court recognizes the heightened showing usually employed when considering whether to permit the deposition of opposing counsel; however, the line of cases utilizing that test did not involve a scenario in which the party itself has suggested it might call its own attorney to testify. As a general principle, the attorney-client privilege cannot be used as a sword and a shield, and fairness dictates that if STS has disclosed Mr. Kotich as a potential witness in support of its defenses, Ms. Fugett should be afforded the opportunity to depose him. The court will not enter a protective order wholly prohibiting his deposition or any other discovery. Should STS wish to assert

attorney-client privilege or work-production objections, it may do so in response to specific questions posed during Mr. Kotich's deposition or in response to discovery requests.

## I.     Relevant Background

Ms. Fugett asserts she was subjected to unwelcome sexual harassment, a sexually hostile work environment, and retaliation in violation of state and federal statutes. She brings claims under Title VII of the Civil Rights Act of 1964,[1] Title I of the Civil Rights Act of 1991,[2] and the Kansas Act Against Discrimination.[3] Ms. Fugett alleges, among other things, that she complained to STS's management about sexual harassment in the workplace during her employment.[4] She alleges that STS "failed to take prompt and appropriate corrective action in response to these complaints to protect [Ms. Fugett] from being subjected to sexual harassment and a sexually hostile work environment."[5] Ms. Fugett also alleges that STS "failed to exercise reasonable care to prevent and promptly correct the sexual harassment to which [Ms. Fugett] was subjected."[6] She further alleges that STS failed to "establish and enforce policies to prevent unlawful sexual harassment;" it "failed to properly train…its supervisors and employees concerning their duties and obligations under…Title VII;" and its managers "failed to remedy the harassment and discrimination."[7] STS denies these allegations.[8]

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] 42 U.S.C. § 1981A.

[3] K.S.A. § 44-1009, *et seq.*

[4] Compl. at ¶ 28, ECF No. 1.

[5] *Id.*

[6] *Id.* at ¶ 29.

[7] *Id.* at ¶¶ 33–35.

[8] Answer at ¶¶ 2, 10, ECF No. 3.

Mr. Kotich serves as general counsel for STS and is an attorney of record in this case. Mr. Kotich is an attorney in private practice who also represents other clients.[9] Prior to the this lawsuit, STS states it hired Mr. Kotich to teach mandatory training classes to STS employees on the topic of sexual harassment. Mr. Kotich served as STS's general counsel during the time period when Ms. Fugett complained of sexual harassment. STS states that President Tom Baumann and Mr. Kotich jointly investigated Ms. Fugett's allegations when the claims came to their attention.[10] During the investigation, Mr. Kotich attended interviews of employees, including Ms. Fugett, and STS states he advised Mr. Baumann during the investigation.[11]

Both STS and Ms. Fugett listed Mr. Kotich as a potential witness in the parties' respective Fed. R. Civ. P. 26(a)(1) initial disclosures, copies of which the parties submitted to the magistrate judge prior to the scheduling conference. STS argues in the present motion that it is entitled to a protective order to protect the attorney-client discussions that were held between Mr. Kotich and STS employees and to protect Mr. Kotich's attorney work-product.[12]

## II.     Discussion

Fed. R. Civ. P. 26(c) governs protective orders. The rule states, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."[13] The district court has broad discretion to fashion the scope of a protective order.[14] Despite this substantial latitude, "a protective order is only warranted when

---

[9] *Id.*

[10] Fed. R. Civ. P. 26(a) Initial Disclosures at 4 (submitted to the magistrate judge).

[11] Mem. in Supp. of Def.'s Mot. for a Protective Order at 4, ECF No. 10.

[12] *Id.* at 7.

[13] Fed. R. Civ. P. 26(c)(1).

[14] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[15] The party seeking a protective order bears the burden of establishing good cause.[16] To do this, the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[17]

STS has not established good cause for the entry of a protective order. STS seeks an order "forbidding discovery with regard to A.J. Kotich;"[18] however, the substance of STS's supporting memorandum focuses only on the test for deposing an opposing party's attorney, not on any document production, which would require STS to properly support an attorney-client privilege or work-production objection.[19] STS fails to set forth, let alone satisfy, the elements of an attorney-client privilege or work-production objection, and therefore a protective order barring document discovery "with regard to" Mr. Kotich is inappropriate at this time. STS may still lodge well-founded attorney-client privilege or work-production objections in response to specific discovery requests.

STS also has not shown good cause for the entry of a protective order barring Mr. Kotich's deposition. In general, "[a]ttorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their

---

[15] *Herrera v. Easygates, LLC*, No. 11-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikins v. Delux Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).

[16] *Layne Christensen Co.*, 271 F.R.D. at 244.

[17] *Aikins*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, n.16 (1981).

[18] Mot. for Protective Order at 1, ECF No. 9.

[19] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984) (finding that the party asserting an attorney-client privilege or work-product objection as a bar to discovery bears the burden of establishing that either or both apply); *see also McCoy v. Miller*, No. 12-3050-JAR, 2013 WL 5966137, at *2 (D. Kan. Nov. 8, 2013) (suggesting that attorney-client privilege is not an appropriate basis upon which to enter a protective order because it does not fall within the categories set out in Rule 26(c)); *P.S. v. Farm, Inc.*, No. 07–CV–2210–JWL, 2009 WL 483236, at *11 (D. Kan. Feb. 24, 2009) (stating that assertions of attorney-client privilege do not give rise to "good cause" within the meaning of Rule 26(c)).

license to practice law or their employment by a party to represent them in litigation."[20] Although the Federal Rules of Civil Procedure exempt privileged material from discovery, the "Rules…do not themselves exempt attorneys from being a source of discoverable facts."[21]

This district, however, has recognized the potential for abuse in deposing an opponent's attorney by inviting "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[22] As a result, this district has generally applied a heightened standard to requests to depose an opposing party's attorney. Notably, none of these cases involved a situation in which the party seeking to prevent the deposition of its attorney had itself listed the attorney as a potential witness in its Rule 26(a)(1) initial disclosures.

In *Kannaday v. Ball*,[23] the undersigned considered whether to apply the heightened standard for deposing opposing counsel. Highly summarized, the action arose from a motor vehicle accident resulting in the death of the driver and causing severe injuries to the plaintiff, a passenger in the vehicle. After obtaining a state-court judgment in her favor, the plaintiff filed two related garnishment actions in federal court. In both federal proceedings, the insurer defendant sought to depose plaintiff's counsel, who had represented the plaintiff in the state court action as well as the federal proceedings. In the federal garnishment proceedings, Chief Magistrate Judge James P. O'Hara and the undersigned both held that the heightened standard for deposing opposing counsel did not apply to the deposition of plaintiff's counsel because the deposition included topics related to the underlying tort case and not to counsel's role as the

---

[20] *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 248 (D. Kan. 1995).

[21] *Id.* at 247.

[22] *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (citing *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

[23] No 12-2742-RDR, 2013 WL 3820013 (D. Kan. July 24, 2013).

plaintiff's attorney in the federal garnishment actions.[24] The rationale for applying the heightened standard—delay, disruption of the case, harassment, and unnecessary distractions into collateral matters—were not present in the federal garnishment actions.[25]

Likewise, it appears Ms. Fugett will seek information pertaining to the events giving rise to her cause of action rather than legal advice Mr. Kotich provided to STS or information related to Mr. Kotich's role as STS's counsel in this action. This case provides a stronger basis for allowing the deposition of Mr. Kotich than did the *Kannaday* cases because here, STS has itself identified Mr. Kotich as a potential witness. Rule 26(a)(1) requires, among other things, that a party must disclose the name and contact information of each individual likely to have discoverable information "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[26] Mr. Kotich is the second-named individual appearing on STS's initial disclosures, listed just after Mr. Baumann. The disclosures state that he "is likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings." They go on to state,

> A.J. Kotich will testify to the fact STS, Inc. has a policy prohibiting sexual harassment. The policy prohibiting sexual harassment was in effect prior to the alleged incidents involving the plaintiff and Deb Ponton. Mr. Kotich will testify that he and Tom Baumann immediately investigated the allegations of Ms. Fugett when the claims came to their attention. Mr. Kotich can testify to the investigation that was completed in a timely manner. Mr. Kotich will testify there was no sexual harassment of the plaintiff by Deb Ponton. A.J. Kotich will testify that STS counselled Ms. Ponton regarding sexual harassment and not to make similar rude statements in the future. On July 9, 2013, A.J. Kotich taught a session on legal issues, including the STS

---

[24] *Id.* at *3 (citing *Kannaday v. Ball*, Case No. 09-255-JWL, Order at 3, ECF No. 75).

[25] *Id.*

[26] Fed. R. Civ. P. 26(a)(1)(A)(i).

6

prohibition on sexual harassment which was attended by Marshonda Fugett.

The description of Mr. Kotich's proposed testimony concerns factual occurrences and not legal advice provided to STS. By listing Mr. Kotich as a potential witness on its initial disclosures, STS has admitted that he possesses relevant, discoverable information. Certainly, Mr. Kotich also possesses information that may be shielded from discovery by the attorney-client privilege. But the attorney-client privilege cannot be used as a sword and a shield—disclosing Mr. Kotich as a potential witness in support of the defense of this case but then seeking to prevent the opposing party from testing his testimony because he also happens to be an attorney of record.

Even considering the heightened standard typically required for deposing opposing counsel, the court would still allow the deposition. This district generally follows the criteria set forth in *Shelton v. American Motors Corp.*,[27] when determining whether to allow the deposition of opposing counsel.[28] The Eighth Circuit in *Shelton* held that depositions of opposing counsel should be limited to those circumstances when the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[29]

---

[27] 805 F.2d 1323 (8th Cir. 1986).

[28] *See, e.g., Buth v. AAA Allied Grp., Inc.*, No. 12–CV–1223–JWL–DJW, 2013 WL 1308543, at *1 (D. Kan. Mar. 28, 2013) (stating that as a result of potential abuse in deposing opposing counsel, this district generally follows the *Shelton* criteria); *Ed Tobergate Assocs. v. Russell Brands, LLC*, 259 F.R.D. 550, 554–55 (D. Kan. 2009) (stating that "courts in this District have almost universally applied the *Shelton* criteria in deciding whether to allow the deposition of opposing trial counsel"); *Cont'l Coal, Inc. v. Cunningham*, No. 06–2122–KHV, 2008 WL 145245, *2 (D. Kan. Jan. 14, 2008) (applying the *Shelton* criteria to a motion for a protective order prohibiting the depositions of opposing counsel). *See also Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995) (applying the *Shelton* criteria).

[29] *Shelton*, 805 F.2d at 1326.

7

While STS argues all information may be obtained from Mr. Baumann, Ms. Fugett argues STS presumably listed Mr. Kotich in its initial disclosures for a reason. Ms. Fugett speculates that Mr. Kotich likely possesses certain information about the investigation into her claims that Mr. Baumann might not. At this early stage of the proceedings, with little discovery having taken place, it is difficult to determine whether there are other avenues to obtain the information sought because, for one, the court is unclear what information Ms. Fugett may seek. At the time STS filed its motion for a protective order, Ms. Fugett had yet to notice Mr. Kotich's deposition or to subpoena him, and it appears she has not yet served any written discovery concerning Mr. Kotich. The fact that STS listed Mr. Kotich in its initial disclosures also suggests that he possesses relevant, non-privileged information.

Ms. Fugett also argues that information possessed by Mr. Kotich is crucial to the preparation of her case because STS "has made it clear that it intends to assert that an appropriate and timely investigation was conducted in response to [Ms. Fugett's] complaints of sexual harassment."[30] Accordingly, plaintiff argues that without information from Mr. Kotich, she will have no other means to fully rebut STS's claim that it exercised reasonable care to promptly correct the alleged sexual harassment.

The court previously considered the third *Shelton* criterion in *Rahn v. Junction City Foundry, Inc.*[31] In *Rahn*, the court held that a deposition of opposing counsel was crucial because it would allow the deposing party to determine the extent of certain investigations undertaken by the deponent.[32] The court permitted the plaintiff to depose opposing counsel when the information plaintiff sought could be used to undermine a required element of the defendant's

---

[30] Pls. Resp. in Opp'n to Def.'s Mot. for Protective Order at 8, ECF No. 12.

[31] No. 00–2128–KHV, 2000 WL 1679419, at *1 (D. Kan. Nov. 3, 2000).

[32] *Id.* at *3.

defense that it acted reasonably and promptly to correct any sexual harassment. The court also held that information necessary to rebut a defense of the opposing party was "crucial."[33] Here, as in *Rahn*, what took place during the investigation of Ms. Fugett's allegations is relevant because STS has taken the position that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.[34] The information regarding the investigation that plaintiff seeks could be potentially used to undermine a defense. Therefore, the third criterion of the *Shelton* test is satisfied.

For these reasons, the court denies STS's motion for a protective order barring discovery with regard to Mr. Kotich. Nothing in this order shall be construed as prohibiting any properly raised attorney-client privilege or work-production objections asserted in response to specific questions during Mr. Kotich's deposition or in response to discovery requests.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Security Transport Services, Inc.'s Motion for Protective Order (ECF No. 9) is denied.

**IT IS SO ORDERED.**

Dated this 2nd day of February, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[33] *Id.*

[34] *See* Mot. by Def. Security Transport Services to Amend the Pleadings at 2, ECF No. 13 (moving to amend its answer to more specifically plead certain affirmative defenses).